STATE of Missouri, Respondent,

v.

ENTERTAINMENT VENTURES I,
INC., d/b/a High Hill Cabaret, and
James L. Alexander, Appellants.

No. SC 83339.

Supreme Court of Missouri,
En Banc.

May 15, 2001.

Mark G. Anderson, Charles E. Smarr, Jefferson City, for Appellants.

Kelly C. Broniec, Pros. Atty., Montgomery City, for Respondent.

Jeremiah W. (Jay) Nixon, Atty. Gen.,Jefferson City, Virginia W. Lay, Asst. Atty. Gen., Kansas City, for Amicus Curiae.

HOLSTEIN, Judge.

Entertainment Ventures I, d/b/a High Hill Cabaret, and its president, James L. Alexander, (collectively referred to as EVI) were found to be a operating a public and common nuisance pursuant to section 311.740 [1] for serving alcohol without a city

---

1. Unless otherwise indicated, all citations are to RSMo 2000.

liquor license, selling alcohol to intoxicated persons, and allowing certain acts of lewdness, all in violation of state liquor control law. EVI appealed, and the case was transferred to this Court, *Mo. Const. art. V, sec. 11*, because of our exclusive appellate jurisdiction in all cases involving the validity of statute or provision of the constitution of this state. *Mo. Const. art. V, sec. 3*. EVI challenges the constitutionality of sections 311.740 and 311.750 under the Due Process Clause of the United States and Missouri constitutions, claims that the findings in the trial court are not supported by the evidence, and claims that the trial court erroneously applied the law. This Court affirms.

## I.

The standard of review of this bench-tried case is set out in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy*, 536 S.W.2d at 32. In a court-tried matter we accept as true the evidence and reasonable inferences in favor of the prevailing party and disregard the contrary evidence. *Gilmartin Bros., Inc. v. Kern*, 916 S.W.2d 324, 331 (Mo.App. 1995).

EVI operated the Hill High Cabaret (Cabaret), an establishment where patrons are entertained by semi-nude female dancers. The Cabaret serves alcohol by the drink, and possessed a temporary retail liquor by the drink resort license issued by the state. The City of High Hill, however, requires that retail liquor establishments also obtain a liquor license issued by the city. EVI knew about the city license requirement and inquired about obtaining a city liquor license, but the City of High Hill ultimately refused EVI's application.

EVI did obtain a license from the city to operate only as a restaurant.

Even though it was denied a city liquor license, the Cabaret opened in February of 2000 and began serving liquor on the premises. On February 25, three Missouri Division of Liquor Control (Division) agents went to the Cabaret. The agents observed a female dancer perform certain lewd acts, including exposing the vulva and areola portions of her body. On March 4, patrons Daniel Sheperd and Bill Sheperd saw a dancer completely expose her breasts while at the Cabaret.

On February 27, 2000 a witness saw Merle Palmer enter the establishment sober, and three hours later leave the establishment staggering and visibly intoxicated. Police arrested Mr. Palmer shortly after and found him to have a blood alcohol content of .226 percent. On March 19, John Miller was served four beers and two shots of alcohol at the establishment. When a police officer pulled over Mr. Miller's car a short distance from the Cabaret, the officer found him to be visibly intoxicated, with a blood alcohol content of .157 percent. On April 1, witnesses observed Sammie Ray Williams, visibly intoxicated, leaving the High Hill Cabaret. Police stopped his vehicle and administered a breath test, and the result was .307. Mr. Williams told police that he had consumed twelve beers while at the High Hill Cabaret from 2:00 p.m. and 9:30 p.m.

On March 31, 2000 the Montgomery County prosecutor filed a complaint asking the circuit court to declare the Cabaret a public and common nuisance pursuant to section 311.740 because the Cabaret served intoxicating liquor in violation of state liquor control law. The state alleged the lewd acts, the city license requirement, and the incidents involving Mr. Palmer and Mr. Miller, noted above. On April 19, the state filed an amended petition raising

the incident with Mr. Williams. A hearing was held on April 21. EVI offered 12 exhibits, cross-examined the state's witnesses, and put the president of EVI, James L. Alexander, on the witness stand. He denied any knowledge of the lewd acts or that he served intoxicated persons, though he was present in the establishment when the activity occurred.

The circuit court issued an order on May 22 finding that the Cabaret was in violation of state liquor control law because the establishment does not have a city liquor license from the City of High Hill, because dancers employed at the Cabaret had engaged in lewd acts on the premises, and because the Cabaret had served intoxicated persons. The court declared the Cabaret to be a common and public nuisance as defined by section 311.740 because it was in violation of state liquor law, and closed the establishment for one year pursuant to section 311.750. This appeal followed.

## II.

■ EVI's first constitutional argument[2] challenges the nuisance law, which allows an action to enjoin any establishment as a public and common nuisance if it is operating "in violation of [the liquor control] law." *Sec. 311.740.* Citing the Due Process Clause of the United States Constitution and article I, section 10 of Missouri's Constitution, EVI claims the provision defining a nuisance, section 311.740, is so vague and indefinite that it violates its right to due process of law.

■ In reviewing vagueness challenges, the language is to be evaluated by applying it to the facts at hand. *Cocktail Fortune, Inc. v. Supervisor of Liquor Control,* 994 S.W.2d 955, 959 (Mo. banc 1999). A valid statute provides a person of ordinary intelligence a reasonable opportunity to learn what is prohibited. *State v. Mahurin,* 799 S.W.2d 840, 842 (Mo. banc 1990); *Roberts v. United States Jaycees,* 468 U.S. 609, 629, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984). The prohibition against vagueness ensures that laws give fair and adequate notice of proscribed conduct. *State ex rel. Cook v. Saynes,* 713 S.W.2d 258, 260 (Mo. banc 1986). In addition, the void-for-vagueness doctrine protects against arbitrary and discriminatory enforcement. *Id.* A statute can be void for vagueness if its prohibitions are not clearly defined. *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

■ Section 311.750.1 expressly authorizes the prosecuting attorney of any county or city to bring an action to enjoin any nuisance as defined in the liquor control law. Section 311.740.1 defines a public and common nuisance, in relevant part, as:

> Any room, house, building, boat, vehicle, structure or place of any kind where intoxicating liquor is sold, manufactured, kept for sale or bartered, in violation of this law and all intoxicating liquors and all property kept and used in maintaining such a place and any still, doubler, worm, worm tub, mash tub, fermenting tub, vessel, fixture or other property of any kind or character used . . . in the production or manufacture of intoxicating liquor is hereby declared to be a public and common nuisance. . . .

EVI's complaint is with the words: "and any still, doubler, worm, worm tub, mash tub, fermenting tub, vessel, fixture or other property of any kind or character. . . ."

---

**2.** In its reply brief, EVI alludes (for the first time) to an equal protection claim suggesting that, though the state has a legitimate state interest in regulating intoxicating liquor, sections 311.740 and 311.750 are not narrowly tailored to accomplish that goal. Constitutional claims not asserted at the earliest opportunity are waived. *Crittenton v. Reed,* 932 S.W.2d 403, 406 (Mo. banc 1996).

EVI claims that these words enacted in 1939 render the entire provision an out-of-date relic of post-prohibition era legislation, that these words are no longer of common usage, and that after reading the statute a person of ordinary intelligence is left to guess at what conduct is prohibited.

The statute addresses both the sale and manufacture of liquor. But the part of the statute relating to manufacture does not apply to EVI, because there is no evidence that EVI manufactures liquor. The words the legislature used to describe tools involved in the manufacture of liquor are not relevant to this appeal, and the Court need not reach the issue of whether they are unconstitutionally vague. EVI does not claim the part of the statute relating to the sale of liquor, the "place ... where intoxicating liquor is sold ... in violation of this law," is anything other than perfectly clear. Moreover, there is no evidence that application of the law in this case is arbitrary or discriminatory.

■■ EVI's second constitutional issue involves section 311.750, which allows an action in equity to enjoin a nuisance as it is defined in section 311.740. Section 311.750 states that the state or local prosecutor may bring such an action. It further provides: "If it is made to appear by affidavit, or otherwise to the satisfaction of the court ... that such nuisance exists, a temporary writ of injunction shall forthwith issue restraining the defendant from conducting or maintaining any such nuisance until the conclusion of the trial." *Sec. 311.750.1.* EVI's claim is that the statute, on its face, deprives a defendant of a meaningful opportunity to be heard before being deprived of legal rights. *Fuentes v. Shevin,* 407 U.S. 67, 81, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). EVI fails to consider the possibility that Rule 92 was followed by the trial judge and that the rule might supercede the temporary injunction procedure described in section 311.750.

■■ In any event, EVI's claim fails because to have standing to raise a constitutional issue, the objecting party's rights must have been affected. *Silcox v. Silcox,* 6 S.W.3d 899, 903 (Mo. banc 1999). In this case the Cabaret was never closed or otherwise enjoined prior to hearing or a final order. On April 4, 2000, the state moved for a temporary restraining order. There was no allegation demonstrating that immediate and irreparable harm would result absent such relief. Consistent with Rule 92.02(a)(1), the trial court denied the motion. On April 21, the state asked for a temporary order closing the Cabaret pending the court's final order. The court also denied that request. EVI has no standing to raise this issue of the temporary injunction.

As to the constitutionality of the nuisance hearing itself, EVI introduced evidence and had the opportunity to call its own witnesses and cross-examine the state's witnesses at its trial. There is no due process violation evident. EVI had a meaningful opportunity to be heard, including the right to an impartial decision maker, the right to know the claims against it, and the right to confront and cross-examine opposing witnesses and to rebut their testimony with its own evidence. *Mueller v. Ruddy,* 617 S.W.2d 466, 475 (Mo.App.1981); *Valter v. Orchard Farm Sch. Dist.,* 541 S.W.2d 550, 557 (Mo. 1976).

### III.

■■ EVI next argues that because it had a liquor-by-the-drink *resort* license, the city had no authority to license it. Its argument is founded on the opening phrase of section 311.095.1. It begins, "Notwithstanding any other provisions of this chapter to the contrary, ...." a qualified person may be issued a license for retail consumption of liquor by the drink on the premises of a resort. EVI then

388

points to the closing phrase of section 311.220.2, which authorizes incorporated cities to license retailers of intoxicating liquor, "where not inconsistent with the provisions of this law." EVI asserts that section 311.220.2 is "contrary" to section 311.095.

The precise question presented here was discussed at length in *State ex rel Casey's v. City of West Plains*, 9 S.W.3d 712 (Mo. App.1999). The court, after careful analysis, concluded that the authority of the state to issue a resort license under 311.095.1 was not intended to deprive an incorporated city of the specific authority granted in section 311.220 to license the sale of liquor. *Id.* at 719. EVI requests that *Casey's* be overruled based on this Court's holding in *Allstate Distribs., Inc. v. Norfleet*, 750 S.W.2d 73 (Mo. banc 1988). But in that case the Court did not hold that section 311.095.1 supercedes a city's authority to issue a license to a resort. The actual holding was that a municipality exhausts its authority to tax liquor when it requires a city license. *Id.* at 76. *Casey's* is not inconsistent with *Allstate*. *Casey's* is not overruled.

■■■ EVI also claims that the Division has construed section 311.095 as preempting the power of cities to license liquor retailers. It relies on the testimony of liquor control agent Steve Shimmers, who testified that the policy of his agency was to issue a resort license prior to the licensee having obtained a city liquor license. Contrary to EVI's assertions, Shimmers did not state that the Division's policy was to encourage or permit the actual operation of a resort licensee without the required city license. The order in which licenses are issued is of no consequence in determining whether an establishment has the lawful authority to operate.

Other arguments are advanced claiming that section 311.220.1 is contrary to section 311.095.1. Put simply, the two sections are not contrary to or inconsistent with each other. Indeed, the two sections are entirely compatible and are part of a complementary system of state and local regulation of businesses that sell intoxicating liquor.

*IV.*

■■■ EVI's remaining points generally attack the sufficiency of the evidence. EVI claims that the findings of the trial court relating to the city license, the lewdness, and the serving of intoxicated persons are not supported by the facts. Appellate courts, in reviewing bench trials, give due deference to the trial court and its unique ability to judge the credibility of the witnesses and will uphold the judgment of the trial court if the result was correct on any tenable basis. *Trapp v. Barley*, 897 S.W.2d 159, 164 (Mo.App. 1995).

■■■ The Division's lewdness regulation provides, in relevant part:

(14) Lewdness. No retail licensee or his/her employee shall permit in or upon his/her licensed premises—

. . . .

(B) The displaying of any portion of the areola of the female breast;

. . .

(D) The actual or simulated displaying of the pubic hair, anus, vulva or genitals;

. . . .

11 CSR sec. 70–2.130(14)(B) and (D); *see also sec.* 311.660 (authorizing the supervisor of liquor control to establish regulations for the conduct of liquor licensees). The trial court found that "the evidence indicated that on numerous occasions, female dancers displayed and exposed the areola portion of their breasts, pubic hair and vulvas." On several occasions in one evening, liquor control agents observed a female dancer expose the vulva and areola portions of her body. On another occa-

sion, two patrons observed a female dancer expose the areola portion of her breasts. Both incidents are a clear violation of the regulation noted above.

Serving intoxicated persons is also a violation of the liquor control law. *Sec. 311.310.* On three different occasions within a little more than a month, visibly intoxicated persons were arrested moments after leaving the Cabaret. Two of these patrons had blood alcohol levels at 200 percent and 300 percent, respectively, of that giving rise to a presumption of intoxicated driving. *Sec. 302.505.1.* Another had a blood alcohol content of .157 percent. Each of these persons had consumed several alcoholic beverages inside EVI's business.

Evidence of just one of these violations would have been sufficient for the trial court to have found a violation of liquor control law under section 311.740. In response, EVI points to the self-serving testimony of James L. Alexander, in which he claims he was ignorant of the lewd conduct of his employees. He also claims that he stopped serving alcohol to Mr. Williams, Mr. Palmer, and Mr. Miller once he was aware of their inebriated condition. EVI would have us disregard the testimony of those present who saw the dancers' performances, and others who observed the obvious drunkenness of the customers, albeit from a distance as the customers exited the Cabaret. Given that Mr. Alexander was present on each occasion, his claims of ignorance ring hollow. His assertion that, of all present, only he did not see the lewd acts or realize the intoxication of his patrons prior to serving their last drinks strains credulity. The record discloses substantial circumstantial evidence that Mr. Alexander knew what was happening and permitted it to occur.

The record also establishes beyond question that EVI operated without a municipal license as required by the city ordinances of High Hill. State liquor licensees are required to comply with valid local licensing ordinances. *See sec. 311.220.* High Hill's ordinance is not shown to be unauthorized by law.

In order to find EVI to be operating a public and common nuisance, it was only necessary for EVI to have committed one violation of liquor control law. The record shows substantial evidence of at least six separate violations committed in three different ways; that EVI employees served liquor to intoxicated persons on three occasions, that lewd conduct was permitted on the premises on at least two occasions, and that EVI did not possess a valid city liquor license. The judgment is affirmed.

All concur.